UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOREEN HEAD,

       Plaintiff,                            Case No.

v.                                                Hon.

DETROIT STOKER COMPANY,

       Defendant.

---

Noah S. Hurwitz (P74063)
NACHT, ROUMEL, & HURWITZ, P.C.
*Attorneys for Plaintiff*
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff Noreen Head, by and through her attorneys, NACHT, ROUMEL, & HURWITZ, P.C., and states the following:

**INTRODUCTION**

1. This is an employee rights lawsuit against Detroit Stoker Company ("Defendant") precipitated by the termination of Plaintiff's employment after she contracted COVID-19 in the workplace. Rather than being offered compassion and notice of her employee benefits, Defendant hid from Plaintiff the fact that she could be eligible for worker's compensation benefits or avail herself of legal protections

1

under the Family Medical Leave Act and Americans with Disabilities Act. When Plaintiff missed additional time from work to undergo an emergency eye surgery to relieve an edema resulting from COVID-19 complications, she was unceremoniously terminated after nearly 20 years of exemplary service for Defendant.

## JURISDICTION AND PARTIES

2. Plaintiff Noreen Head ("Plaintiff") is an individual residing in the City of Monroe, County of Monroe, State of Michigan.

3. Defendant Detroit Stoker Company ("Defendant") is a domestic for-profit corporation headquartered in the City of Monroe, County of Monroe, State of Michigan.

4. This action arises under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; Michigan's Persons with Disabilities Civil Rights Act (the "PWDCRA")[1], M.C.L.A. § 37.1101, *et seq.*; The Workers' Disability Compensation Act ("WCDA"), M.C.L. 418.301(13), *et seq.*; and the Michigan COVID-19 Law, M.C.L. 419.401, *et seq.*

---

[1] Plaintiff filed a disability discrimination charge with the Equal Employment Opportunity Commission on August 9, 2021, Charge No. 471-2021-03271, and will amend the Complaint in the future to add a claim for damages under the American with Disabilities Act.

2

5. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state law claims.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant's principal place of business is located and where the events giving rise to Plaintiff's claims took place.

7. The facts and unlawful employment practices within the meaning of the FMLA, the PWDCRA, the Michigan COVID-19 Law, M.C.L. 419.401, *et seq*., and the WDCA giving rise to this Complaint occurred within the Eastern District of Michigan.

8. Defendant is an employer and Plaintiff was its employee at all relevant times within the meaning of the relevant law.

## GENERAL ALLEGATIONS

9. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

10. Plaintiff Noreen Head was hired by Defendant in 2001 as a Payroll Specialist.

11. Throughout her nearly 20 years of service to Defendant, Plaintiff proved herself to be an exemplary employee.

12. After experiencing symptoms consistent with COVID-19 and learning that her two coworkers had tested positive for the virus, Plaintiff tested positive for COVID-19 on Tuesday, April 13, 2021.

13. Immediately after testing positive for COVID-19, Plaintiff notified Defendant that she would need to quarantine.

14. By Friday, April 16, 2021, Plaintiff experienced a severe drop in blood oxygen levels, and was hospitalized in the intensive care unit at the University of Michigan Hospital.

15. Plaintiff remained hospitalized until May 2, 2021.

16. During this period, Defendant placed Plaintiff on a protected medical leave pursuant to the FMLA.

17. Following her discharge from the hospital, Plaintiff continued to experience lingering symptoms of COVID-19, keeping her on a protected medical leave and delaying her return to work.

18. During this time, Plaintiff was also complying with and protected by the "stay home provisions" outlined in MCL 419.401 because she "display[ed] the principal symptoms of COVID-19" and "ten days" had not passed since her "principal symptoms of COVID-19 [had] improved".

19. MCL 419.401 expressly states that an employer "shall not discharge, discipline, or otherwise retaliate against an employee who (a) complies with the stay-

home provisions set forth [in the Act]; (b) Opposes a violation of this act; or (c) reports health violations related to COVID-19."

20. Defendant communicated with Plaintiff infrequently during this time and failed to notify her of her rights under FMLA or Michigan's Workers' Compensation statute, which both have applicability to Plaintiff's COVID-19 injuries that occurred at work.

21. Defendant also failed to engage with Plaintiff in an interactive process to assess whether she needed reasonable accommodations that would help her perform the essential functions of the job.

22. The employer's duty to participate in the interactive process in good faith is mandatory. *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868 (6th Cir.2007).

23. In early June 2021, Plaintiff communicated to Defendant that she would possibly be returning to work after a June 24, 2021 doctor's examination.

24. On June 14, 2021, Defendant communicated to Plaintiff that her job at Company had been "eliminated."

25. Defendant retained similarly situated employees who were not suffering from medical disabilities at the time.

26. When Plaintiff asked Defendant why she had been "fired", she was told "we don't like to use that word."

27. Plaintiff begged to know why she had been terminated from a job she had performed admirably the last two decades of her life and was told by Defendant, "the other three [coworkers] have a degree."

28. Plaintiff's job was not eliminated because the duties she performed are still being carried out by other employees in the department.

## COUNT I – FMLA RETALIATION

29. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

30. Plaintiff dutifully and professionally performed her duties as a Payroll Specialist for Defendant for nearly two decades. It was not until attempting to return to work after taking a protected FMLA absence that her employment was terminated.

31. Defendant terminated Plaintiff's employment due to her prior exercise of her rights under the FMLA, including taking leave for her FMLA-qualifying serious medical condition.

32. Defendant cannot set forth evidence that it planned the elimination of Plaintiff's job before her protected medical leave.

33. By terminating Plaintiff's employment prior to her protected return to work date, Defendant failed to comply with 29 U.S.C. § 2614(a)(1)(A)-(B) which states that an employee returning from medical leave has the right to "be restored by the employer to the position of employment held by the employee when the leave

commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

34. Defendant's actions in violation of the FMLA were willful.

35. As a direct and proximate result of Defendant's retaliation against Plaintiff for exercising her FMLA rights, Plaintiff suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

36. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## COUNT II – FMLA INTERFERENCE

37. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

38. Plaintiff was eligible for FMLA leave.

39. Plaintiff provided medical documentation that she had a serious health condition that qualified her for FMLA leave.

40. Defendant terminated Plaintiff prior to the expiration of her twelve weeks of FMLA leave.

7

41. Defendant therefore interfered with Plaintiff's FMLA leave.

42. Defendant's actions in violation of the FMLA were willful.

43. As a direct and proximate result of Defendant's interference against Plaintiff for exercising her FMLA rights, Plaintiff suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

44. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## COUNT III
## WORKERS' DISABILITY COMPENSATION ACT- RETALIATION

45. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

46. The Workers' Disability Compensation Act ("WDCA"), MCL 418.301(13), prohibits retaliatory discharge against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under the WDCA or because of the exercise by the employee on behalf of himself.

47. Plaintiff asserted a right to obtain necessary medical services for an injury that occurred at work.

48. Defendant knew Plaintiff engaged in this protected conduct.

49. Defendant terminated Plaintiff as a consequence of her absences related to a workplace injury (*i.e.*, COVID-19).

50. Because there is indisputably such close temporal proximity between Plaintiff's injury and her termination, there is evidence of retaliation.

## COUNT IV
### (VIOLATION OF PUBLIC ACT 238 OF 2020, MCL 419.403)

51. Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

52. On October 22, 2020, the Michigan legislature passed Public Act 238 of 2020, including MCL 419.403, which creates new protections for employees and is designed to "prohibit an employer from taking certain actions against an employee who does not report to work under certain circumstances related to COVID-19; to prohibit an employee from reporting to work under certain circumstances related to COVID-19; to prohibit discrimination and retaliation for engaging in certain activities; and to provide remedies."

53. MCL 419.403 states that an employer "shall not discharge, discipline, or otherwise retaliate against an employee who (a) complies with the stay-home provisions set forth [in the Act]; (b) Opposes a violation of this act; or (c) Reports health violations related to COVID-19."

54. Plaintiff complied with the "stay home provisions" of the Act when she quarantined after being in contact with persons (*i.e.*, her coworkers) who had tested positive for COVID-19, and shortly thereafter testing positive herself.

55. Plaintiff remained in compliance with the Act when her long COVID symptoms persisted, and she followed the stay home provisions outlined in the Act in that she "display[ed] the principal symptoms of COVID-19" and "ten days" had not passed since her "principal symptoms of COVID-19 [had] improved".

56. Plaintiff was nevertheless terminated the week before she was scheduled to return to work after passing her required quarantine and then recovery period due to contracting COVID-19 in her place of work.

57. Plaintiff was provided with purported legitimate business reasons for her termination—but all reasons provided were clearly pretextual.

58. MCL 419.407(1) states, "[a]n employee aggrieved by a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both, in the circuit court for the county where the alleged violation occurred or for the county where the employer against whom the action is filed is located or has its principal place of business."

59. MCL 419.407(2) states, "[a] court shall award to a plaintiff who prevails in an action brought under this act damages of not less than $5,000.00."

## COUNT VI- RETALIATION IN VIOLATION OF THE PWDCRA

60. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

61. As stated above, Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act.

62. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL 37.1103(d)(ii).

63. Defendant retaliated against Plaintiff for her request for a reasonable accommodation in violation of the PWDCRA, MCL §37.1602, by and through its agents, servants, and/or employees, by acts including, but not limited to terminating Plaintiff's employment and replacing her.

64. As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

**65.** As a further direct and proximate result of Defendant' violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability

to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A.  Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under FMLA, WDCA, Public Act 238, and PWDCRA;

B.  Award Plaintiff appropriate equitable relief, compensatory damages, and exemplary damages;

C.  Appropriate civil penalties;

D.  All costs, attorneys' fees, and interest incurred prosecuting this claim; and

E.  All further relief as the Court deems just and equitable.

        Respectfully submitted
        NACHT, ROUMEL, & HURWITZ, P.C.

        */s/ Noah S. Hurwitz*
        Noah S. Hurwitz (P74063)
        Attorney for Plaintiffs

Dated:  November 9, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOREEN HEAD,

      Plaintiff,                      Case No.

v.                                        Hon.

DETROIT STOKER COMPANY,

      Defendant.

---

Noah Hurwitz (P74063)
NACHT, ROUMEL, & HURWITZ, P.C.
*Attorneys for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
nhurwitz@nachtlaw.com

## **JURY DEMAND**

NOW COMES Plaintiff Noreen Head by and through her attorneys, NACHT, ROUMEL, & HURWITZ, P.C., and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                                Respectfully submitted
                                               NACHT, ROUMEL, & HURWITZ, P.C.

                                               */s/ Noah S. Hurwitz*
                                               Noah S. Hurwitz (P74063)
Dated: November 9, 2021             Attorney for Plaintiff